UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In Re:

Case No.: 19-19062-RAM

ANA DANTON,

Chapter 13

      Debtor(s),

_____/

## DEBTOR'S SUPPLEMENTAL OBJECTION TO CLAIM NO. 5 FILED BY BAYVIEW LOAN SERVICING, LLC

### *IMPORTANT NOTICE TO CREDITOR: THIS IS AN OBJECTION TO YOUR CLAIM*

*This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf.  Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended. Upon the filing of this objection an expedited hearing on this objection will be scheduled on the date already scheduled for the confirmation hearing in accordance with Local Rule 3007-1(B)(2).*

The Debtor, **ANA DANTON**, by and through undersigned counsel, pursuant to Bankruptcy Rule 3007, Local Rule 3007-1(B)(2), and this Court's order entered on April 13, 2020, files this *Supplemental Objection to Claim No. 5 Filed by Bayview Loan Servicing, LLC* and states:

### BRIEF BACKGROUND

1. The basis for the Secured Creditor's, Bayview Loan Servicing, LLC ("Bayview"), proof of claim, #5, is a purchase money mortgage loan that was issued to the Debtor on July 9, 1999 and modified on January 29, 2016.

2. This mortgage loan was used to purchase and is secured by the Debtor's homestead residence located at 11318 SW 147th Place Miami, FL 33196.

3. The loan and mortgage were originally held/owned by Popular Mortgage Corp. ("Popular") and subsequently transferred/assigned to Chase Manhattan Mortgage Corp. ("Chase") on July 13, 1999.

4. At inception, the escrow provisions of the mortgage loan were waived, in writing, by Popular, which gave the Debtor the contractual right to directly pay all required taxes and  insurance, separate from the regular monthly mortgage, principal and interest, payments.

5. About 15 years later, Bayview acquired an interest in the mortgage loan on March 13, 2014.

6.  On January 29, 2016, the Debtor and Bayview entered into a mortgage modification agreement ("Modification") that modified, in part, the mortgage loan.

7.  The Modification is silent as to the issue of escrow funds or the payment thereof.

8.  Instead, the Modification incorporates by reference, at paragraph 4 on page 2, the escrow provision(s) contained in the original mortgage (see true copy of the executed Modification attached to this Objection as "Exhibit A").

### ANY AND ALL ESCROW REQUIREMENTS WERE WAIVED AT THE CLOSING OF THE MORTGAGE LOAN

9.  Paragraph 2 of the uniform covenants of the mortgage provides, in relevant part, that "Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender…These items are called "Escrow Items" (see true copy of the recorded mortgage attached to this Objection as "Exhibit B").

10. Concurrently with the closing of the mortgage, Popular, the original lender, prepared and executed a Waiver of Escrow/Impound Account ("Waiver").

11. Although the Debtor is unable to provide a complete copy of this Waiver, the HUD-1 Settlement Statement for the purchase of the Debtor's homestead clearly shows that Popular was paid a "Escrow Waiver Fee" at line 814 (see true copy of the settled HUD-1 attached to this Objection as "Exhibit C").

12. The HUD-1 also shows that the Debtor paid a full year's worth of hazard and flood insurance directly to "Jimenez & Co. Ins. Agency" at lines 903 and 904, respectively.

13. In addition to the HUD-1, Popular's servicer and future owner of the mortgage loan, Chase, provided an Initial Escrow Account Disclosure Statement at closing that clearly shows NO payments were to be made by the Debtor into an escrow account (see true copy of the Initial Escrow Account Disclosure attached to this Objection as "Exhibit D").

14. Although the mortgage loan was eventually transferred/assigned from Popular to Bayview, the Waiver and, by extension, the Debtor's contractual right to directly pay escrow items were preserved, and Bayview is obliged to honor them.

15. During the 15 years prior to Bayview's acquisition, the Debtor relied on the flexibility afforded by the Waiver to obtain and maintain property insurance at significantly lower cost.

16. As discussed above, the Modification modified certain principal amount(s) and the payment terms thereof, but it did not alter any of the uniform covenants as they relate to escrow.

17. Based on these foregoing, the Debtor submits that the mortgage loan is NOT escrowed as the original Lender waived this requirement.

18. Since the underlying mortgage loan is not escrowed, Bayview's Mortgage Proof of Claim Attachment should be amended to correctly reflect a **total post-petition regular monthly mortgage payment amount of $1327.29** for principal and interest only; similarly, it was improper for Bayview to include $7773.56 for a "projected escrow shortage" to the pre-petition arrearage in its claim (see true copy of the Mortgage Proof of Claim Attachment filed with Bayview's claim attached to this Objection as "Exhibit E").

19. The correct **pre-petition arrearage is $56,049.27** for past due principal, interest, fees, and funds actually advanced/paid by Bayview for taxes and insurance as reflected in Bayview's account ledger/statement filed with its claim (see true copy of the account ledger filed with Bayview's claim attached to this Objection as "Exhibit F").

20. As of this objection, the Debtor has obtained and placed property insurance for the subject property (see true copy of the Debtor's property insurance policy and proof of payment thereof attached to this Objection as "Composite Exhibit G").

**EVEN IF THE COURT FINDS THAT THE MORTGAGE LOAN IS ESCROWED, BAYVIEW IMPROPERLY ADDS A "PROJECTED ESCROW SHORTAGE" TO THE PRE-PETITION ARREARAGE**

21. Should the Court disagree with the Debtor and find that the mortgage loan is indeed escrowed, Bayview's claimed pre-petition arrearage is incorrect and improper as it seeks to include amounts that Bayview did not advance/pay for escrow items prior to filing of this case.

22. Bayview seeks to include an additional $7773.56 in the pre-petition arrearage for a "projected escrow shortage" arguing that this is the "required" amount to maintain a "minimum escrow cushion" under RESPA for the following year.

23. The applicable RESPA regulation, 12 CFR 1024.17(c)(5), does not require lenders/servicers to maintain an escrow cushion.

24. Instead, 12 CFR 1024.17(c)(5) LIMITS the amount a lender/servicer can require for a cushion to one-sixth (1/6) of the estimated total annual payment from the escrow account.

25. As indicated in Bayview's escrow account analysis prepared specifically for this case, the estimated total annual amount for escrow is $9328.28, divided into 12 regular monthly installments of $777.36 (see true copy of the Escrow Account Projection for the Coming Year filed with Bayview's claim attached to this Objection as "Exhibit H").

26. In the Debtor's case, Bayview is allowed to request a maximum of one-sixth of this annual total, $1554.72, for use as a cushion.

27. It should be noted that Bayview's escrow analysis is arbitrary and self-serving.

28. For instance, Bayview could easily forego any need for an escrow cushion by paying the taxes and insurance throughout the year, as the Debtor would, in equal monthly installments.

29. Similarly, Bayview's escrow analysis could be calculated from the beginning of the calendar year and the result would be that only $1554.72, two-months' worth of escrow, is required to maintain the cushion.

30. As a practical matter, if the additional $7773.56 is included in Bayview's claim, then the Debtor will be paying a hefty premium for the escrow items.

31. Essentially, under the plan, the Debtor would be maintaining the monthly escrow installments, $777.36, and "curing" $7773.56 to maintain a cushion for the same escrow items.

32. Based on the foregoing, the Debtor submits that adding any amount to the pre-petition arrearage to maintain an escrow cushion is improper and unnecessary.

33. Should the court disagree with the above, in accordance with the limitations imposed by RESPA, the Debtor contends that the maximum amount that should be included in the pre-petition arrearage for use as a cushion is $1554.72, two months' worth of escrow payments.

WHEREFORE, the Debtor respectfully requests that this Court (1) direct Bayview to amend its Proof of Claim in accordance with the Debtor's objections contained herein; and/or (2) reduce Bayview's claim in accordance with the Debtor's objections contained herein; and/or (3) grant any other relief deemed just, proper, and necessary.

The undersigned acknowledges that this objection and the notice of hearing for this objection will be served

on the claimant and the debtor at least 14 days prior to the confirmation hearing date and that a certificate of service conforming to Local Rule 2002-1(F) must be filed with the court when the objection and notice of hearing are served.

## CERTIFICATION OF LOCAL RULE 9011-4(B)

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted this **April 28, 2020**.

/s/ Paul Meadows
**Paul Meadows, Esq.**
Florida Bar No.: 94279
Fidelis Law, P.A.
Main Office: 454 NW 22 Ave., 207, Miami, FL 33125
Correspondence: P.O. Box 831702 Miami, FL 33283-1702
Email: pmeadowsesqbankruptcy@gmail.com
Tel: (305) 788-9881 || Fax: (305) 547-9608

After Recording Return to:

Wilmington Trust, N.A.
Sophie B. Pendolino
Assistant Vice President
Document Custodian
693 Seneca St., 4th Floor
Buffalo, NY 14210

Loan Number: ▮▮▮▮▮▮
MIN:

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS.
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED.
**LOAN MODIFICATION AGREEMENT**

This Loan Modification Agreement ("Modification"), is effective **January 29, 2016**, between JOSE RODRIGUEZ and ANA DANTON ("Borrower") and **Bayview Loan Servicing, LLC** ("Servicer"), and amends and supplements (1) the Note (the "Note") made by the Borrower, dated 07/09/1999, in the original principal sum of U.S. **$132,000.00**, and (2) the **Mortgage** (the "Security Instrument"), recorded on 7/13/1999 Book 18691 Page 302, Dade County, FL. The Security Instrument, which was entered into as security for the performance of the Note, encumbers the real and personal property described in the Security Instrument (and defined in the Security Instrument as the "Property"), which is located at **11318 SW 147TH PL MIAMI, FL 33196**. That real property is described as follows: LOT 7, BLOCK 5, SUN FISH AT THE HAMMOCKS, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 115, PAGE 21, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA..

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument. The Lender has agreed to do so pursuant to the terms and conditions stated in this Modification. In consideration of the agreements made in this Modification, and other good and valuable consideration which the parties agree they have received, the Borrower and Lender agree to modify the terms of the Note and Security Instrument as follows. The Borrower and the Lender agree that the provisions of this Modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument.

1. The Borrower represents that the Borrower ☒ is, ☐ is not, the occupant of the Property.

2. The Borrower acknowledges that interest has accrued but not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses, in the total amount of **$88,677.69**, have been added to the indebtedness under the terms of the Note and Security Instrument. As of **January 29, 2016**, the amount, including such amounts which have been added to the indebtedness (if any), payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. **$193,496.85**.

MULTISTATE LOAN MODIFICATION AGREEMENT -
V 1.8 Loan No. ▮▮▮▮▮▮

Freddie Mac **UNIFORM INSTRUMENT Exhibit 76   3/12**
(Page 1 of 5 pages)

3. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender, until the Unpaid Principal Balance has been paid. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 7.875%, beginning 11/01/2015 the Borrower promises to make monthly payments of principal and interest of U.S. $1,327.29, beginning on 12/01/2015, and continuing thereafter on the same day of each succeeding month. If on 11/01/2055 (the "Modified Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the Modified Maturity Date. The Borrower will make such payments at M&T Bank 1800 Washington Blvd., 8th Floor Baltimore, MD 21230 or at such other place as the Lender may require.

4. Except to the extent that they are modified by this Modification, the Borrower will comply with all of the covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

5. Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Modification, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

6. If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification.

   ☐ 1-4 Family Rider — Assignment of Rents

   ☐ Modification Due on Transfer Rider

   ☐ Bankruptcy Rider

   ☐ Other rider

7. That all persons who signed the Loan Departments or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

In Witness Whereof, Lender and Borrower have executed this Agreement.

Borrower:

By: _____   Date: 2/10/20 6
    JOSE RODRIGUEZ (Borrower)

By: _____  Date: 2/10/2016
ANA DANTON (Borrower)

**Non-Obligor:**

Non-Obligor Owner or Non-Obligor Spouse (signing solely in connection with any interest held in the Property, as defined above): _____
("Non-Obligor"), residing at: _____.

By: _____  Date: _____
_____
Print Non-Obligor Name

**Servicer:**

By: _____  Date: _____
Vice President, Bayview Loan Servicing, LLC

Licensed Loan Originator: Louis Ferrante
MLO License Number ▮▮▮▮▮
Direct: 877-650-0140 Ext. 1361
Fax:   877-930-3039

OFF.
REC. 18691 PG 302

99R361283 1999 JUL 13 11:27

PREPARED BY: CHIPI GONZALEZ
POPULAR MORTGAGE CORP.
1414 NW 107TH AVENUE, SUITE 302
MIAMI, FL 33172

DOCSTPMTG    462.00 INTNG    264.00
HARVEY RUVIN,  CLERK DADE COUNTY, FL

[Space Above This Line For Recording Data]

## MORTGAGE

LOAN ID #

THIS MORTGAGE ("Security Instrument") is given on JULY 9TH, 1999          . The mortgagor
is JOSE RODRIGUEZ, JOINED BY HIS WIFE AND ANA DANTON, JOINED BY HER HUSBAND
    Irma Fuertes                                        X Jose A. Rodriguez

whose address is 11318 S.W. 147TH PLACE, MIAMI, FLORIDA 33196
("Borrower"). This Security Instrument is given to POPULAR MORTGAGE CORP.
                                        which is organized and existing under the
laws of THE STATE OF FLORIDA                    , and whose address is
1414 NW 107TH AVENUE, SUITE 302, MIAMI, FL 33172                ("Lender").
Borrower owes Lender the principal sum of  ONE HUNDRED THIRTY TWO THOUSAND AND NO/100
                          Dollars (U.S. $   132,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on AUGUST  1ST,
2029     . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other
sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this
purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located
in  DADE                           County, Florida:
LOT 7, BLOCK 5, SUN FISH AT THE HAMMOCKS, ACCORDING TO THE PLAT
THEREOF, RECORDED IN PLAT BOOK 115, PAGE 21, OF THE PUBLIC RECORDS
OF MIAMI-DADE COUNTY, FLORIDA.

which has the address of          11318 S.W. 147TH PLACE                MIAMI
                                  [Street]                              [City]
Florida       33196         ("Property Address");
              [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against all
claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real Property.

FLORIDA--Single Family--FNMA/FHLMC UNIFORM INSTRUMENT                    Form 3010 9/90
FLCM1G -                            Page 1 of 6                          Doc Prep Plus, Inc.

OFF.
REC. 18691 PG 303          LOAN ID #

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or Property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

REC. 18691 PG 304                    LOAN ID #

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the

OFF.
REC. 18691 305          LOAN ID #

inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require

FLCM4G.CS -                    Page 4 of 6                    Doc Prep Plus, Inc.

OFF. REC. 1869 PG 306          LOAN ID █████████

immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgement enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

OFF. 18691 PG 307
REC.

LOAN ID #

**24. Riders** to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1 - 4 Family Rider
☐ Graduated Payment Rider ☒ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider
☐ V.A. Rider ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____   _____ (Seal)
                            JOSE RODRIGUEZ              -Borrower

_____   _____ (Seal)
                            ANA DANTON                 -Borrower

                            _____ (Seal)
                                                       -Borrower

                            _____ (Seal)
                            IRMA FUERTES               -Borrower

                            _____ (Seal)
                                                       -Borrower

                            _____ (Seal)
                                                       -Borrower

STATE OF FLORIDA                 DADE          County ss:

The foregoing instrument was acknowledged before me this  JULY 9TH, 1999  by JOSE
RODRIGUEZ AND ANA DANTON   Jose   n.   Rodriguez   ,Irm-   Fuertes

who is personally known to me or who has produced  FDL, OS Pasport
as identification.



                            Notary Public

DANIEL LAZAR
My Commission CC508071
Expires Nov. 06, 1999

FLCM6G.CS -                    Page 6 of 6                    Doc Prep Plus, Inc.

# EXHIBIT C

## A. SETTLEMENT STATEMENT

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

### B. Type of Loan

| | | |
|---|---|---|
| 1. __ FHA  2. __ FmHA  3. X Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
| 4. __ VA  5. __ Conv. Ins. | | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (P.O.C.) were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| JOSE RODRIGUEZ<br>ANA DANTON<br><br>11318 S.W. 147 PL.<br>MIAMI, FL 33196 | FLORENCIO ANDRES<br>ANAIS ANDRES<br><br>11318 S.W. 147 PL.<br>MIAMI, FL 33196 | POPULAR MORTGAGE CORP.<br><br>1414 NW 107TH AVENUE, SUITE 302<br>MIAMI, FL 33172 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 11318 S.W. 147 PL.<br>MIAMI, FL 33196 | TITLE PARTNERSHIP OF AMERICA | |
| | Place of Settlement<br>3785 N.W. 82 AVENUE, SUITE 315<br>MIAMI, FLORIDA 33166 | I. Settlement Date<br>07/09/99 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | 165,000.00 | 401. Contract sales price | 165,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 6,413.04 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes to | | 406. City/town taxes to | |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. WASTE FROM 07/09 TO 9/30 | 77.11 | 409. WASTE FROM 07/09 TO 9/30 | 77.11 |
| 110. HAMMOCKS MAINT. FEE FROM 07/09 TO 10/01 | 97.24 | 410. HAMMOCKS MAINT. FEE FROM 07/09 TO 10/01 | 97.24 |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 171,587.39 | **420. GROSS AMOUNT DUE TO SELLER** | 165,174.35 |
| **200. Amounts Paid By or In Behalf of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | 3,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 132,000.00 | 502. Settlement charges to seller (line 1400) | 1,555.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 81,340.73 |
| | | GMAC MORTGAGE CORPORATION | |
| 205. | | 505. Payoff of second mortgage loan | 20,494.13 |
| | | INTERNATIONAL FINANCE BANK | |
| 206. | | 506. HAMMOCKS MAINT. FEE FROM 07/01 TO 10/01 | 106.50 |
| 207. | | 507. OVERNIGHT PAYOFF FEE | 25.00 |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes to | | 510. City/town taxes to | |
| 211. County taxes 01/01 to 07/09 | 1,267.22 | 511. County taxes 01/01 to 07/09 | 1,267.22 |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 136,267.22 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 104,788.58 |
| **300. Cash At Settlement From or To Borrower** | | **600. Cash At Settlement To or From Seller** | |
| 301. Gross amount due from borrower (line 120) | 171,587.39 | 601. Gross amount due to seller (line 420) | 165,174.35 |
| 302. Less amounts paid by/for borrower (line 220) | 136,267.22 | 602. Less reduction amount due seller (line 520) | 104,788.58 |
| **303. CASH FROM BORROWER** | 35,320.17 | **603. CASH TO SELLER** | 60,385.77 |

You are required by law to provide TITLE PARTNERSHIP OF AMERICA with your correct taxpayer identification number. If you do not provide TITLE PARTNERSHIP OF AMERICA with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.
CERTIFICATION: Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

_____
Seller's Signature / Tax ID Number

_____
Seller's Signature / Tax ID Number

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).
SUBSTITUTE 1099: The information contained in Blocks E, G, H, I and on line 401 (or, if Form 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

RESPA, HB 4305.2 - REV. HUD-1 (3/86)

| L. SETTLEMENT CHARGES: | FILE #: 1199282 | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | | @ | = | | |
| Division of commission (line 700) as follows: | | | | | |
| 701. $ | to | | | | |
| 702. $ | to | | | | |
| 703. Commission paid at Settlement | | | | | |
| 704. | | | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | P.O.C. Items | | |
| 801. Loan Origination Fee | % | | | | |
| 802. Loan Discount | % | | | | |
| 803. Appraisal Fee | to | NEW FINANCE INC. | | 275.00 | |
| 804. Credit Report | to | NEW FINANCE INC. | 100B | | |
| 805. Lender's Inspection Fee | to | | | | |
| 806. Mtg. Ins. Application Fee | to | | | | |
| 807. Assumption Fee | to | | | | |
| 808. UNDERWRITING FEE | | POPULAR MORTGAGE CORP. | | 195.00 | |
| 809. DOC PREP | | POPULAR MORTGAGE CORP. | | 110.00 | |
| 810. PROCESSINGS FEE | | NEW FINANCE INC. | | 300.00 | |
| 811. FLOOD CERT | | POPULAR MORTGAGE CORP. | | 24.50 | |
| 812. INVEST DELV | | POPULAR MORTGAGE CORP. | | 190.00 | |
| 813. COURIER FEE | | NEW FINANCE INC. | | 60.00 | |
| 814. ESCROW WAIVER FEE | | POPULAR MORTGAGE CORP. | | 320.00 | |
| 815. SERVICE RELEASE PREMIUM TO | | NEW FINANCE -1,385.00 | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | |
| 901. Interest from 07/09/99 to 08/01/99 | | @ $ 28.48 | /day 23 Days | 655.04 | |
| 902. Mortgage Insurance Premium for | | to | | | |
| 903. Hazard Insurance Premium for 1Yrs | | to JIMENEZ & CO. INS. AGENCY | | 1,229.00 | |
| 904. IYR FLOOD INSURANCE | | JIMENEZ & CO. INS. AGENCY | | 269.00 | |
| 905. | | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | | | |
| 1001. Hazard Insurance | | mo.@$ | /mo. | | |
| 1002. Mortgage Insurance | | mo.@$ | /mo. | | |
| 1003. City property taxes | | mo.@$ | /mo. | | |
| 1004. County property taxes | | mo.@$ | /mo. | | |
| 1005. Annual Assessments | | mo.@$ | /mo. | | |
| 1006. | | mo.@$ | /mo. | | |
| 1007. | | mo.@$ | /mo. | | |
| 1008. | | mo.@$ | /mo. | | |
| 1100. TITLE CHARGES | | | | | |
| 1101. Settlement or closing fee | to | TITLE PARTNERSHIP | | 225.00 | |
| 1102. Abstract or title search | to | TITLE PARTNERSHIP | | | 250.00 |
| 1103. Title examination | to | TITLE PARTNERSHIP | | 195.00 | |
| 1104. Title insurance binder | to | | | | |
| 1105. Document preparation | to | TITLE PARTNERSHIP | | | 250.00 |
| 1106. Notary fees | to | | | | |
| 1107. Attorney's fees | to | | | | |
| (includes above items No: | | | ) | | |
| 1108. Title insurance | to | TITLE PARTNERSHIP | | 1,075.00 | |
| (includes above items No: | | SIMULTANEOUS ISSUED POLICY 25.00 | ) | | |
| 1109. Lender's coverage $ | | 132,000.00 ---- 175.00 | | | |
| 1110. Owner's coverage $ | | 165,000.00 ---- 900.00 | | | |
| 1111. TITLE UPDATE CERTIFICATION | | STEWART TITLE/TITLE PARTNERSHIP | | 150.00 | |
| 1112. 97.50 incl 0 Risk Rate to TITLE PARTNERSHIP | | | ORM | | |
| 1113. ATLA 8.1 & 5.1 ENDORSEMENTS | | TITLE PARTNERSHIP | | 50.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | |
| 1201. Recording fees | Deed $ 28.50 ; Mortgage $ 51.00 ; Releases $ 12.00 | | | 79.50 | 12.00 |
| 1202. City/county/stamps | Deed $ ; Mortgage $ | | | | |
| 1203. State tax/stamps | Deed $ 990.00 ; Mortgage $ 462.00 | | | 462.00 | 990.00 |
| 1204. Intangible Tax - | | | | 264.00 | |
| 1205. | | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | | |
| 1301. Survey | to | NOVA SURVEYORS | | 225.00 | |
| 1302. Pest inspection | to | | | | |
| 1303. LIEN & TAX SEARCH | | MIAMI DADE WATER & SEWER/ ISC | | | 53.00 |
| 1304. FEDEX/COURIER/POLICY/PACKAGES | | 2000 COURIER | | 60.00 | |
| 1305. | | | | | |
| 1306. | | | | | |
| 1307. | | | | | |
| 1308. | | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | | | 6,413.04 | 1,555.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____  Buyer/Borrower    _____  Seller
JOSH RODRIGUEZ                               FLORENCIO ANDRES

_____  Buyer/Borrower    _____  Seller
ANA DANTON                                   ANAE ANDRES

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
TITLE PARTNERSHIP OF AMERICA                 Date
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

RESPA, HB 4305.2 -- REV. HUD-1 (3/86)

EXHIBIT D

# INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

Date:  JULY 9, 1999

Loan Number:
Case Number:

Servicer's Name and Address:
CHASE MANHATTAN MORTGAGE CORPORATION
P.O.BOX 78509
PHOENIX, AZ   85062-8509

Toll Free Number:   800-631-5946

Property Address:

11318 S.W. 147TH PLACE
MIAMI, FLORIDA  33196

Borrowers:
  JOSE RODRIGUEZ AND ANA DANTON

Mailing Address:

**THIS IS AN ESTIMATE OF ACTIVITY IN YOUR ESCROW ACCOUNT DURING THE COMING YEAR BASED ON PAYMENTS ANTICIPATED TO BE MADE FROM YOUR ACCOUNT.**

| Month or Period | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| Initial Deposit: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | $ | |
| SEPTEMBER | 0.00 | | | 0.00 |
| OCTOBER | 0.00 | | | 0.00 |
| NOVEMBER | 0.00 | | | 0.00 |
| DECEMBER | 0.00 | | | 0.00 |
| JANUARY | 0.00 | | | 0.00 |
| FEBRUARY | 0.00 | | | 0.00 |
| MARCH | 0.00 | | | 0.00 |
| APRIL | 0.00 | | | 0.00 |
| MAY | 0.00 | | | 0.00 |
| JUNE | 0.00 | | | 0.00 |
| JULY | 0.00 | | | 0.00 |
| AUGUST | 0.00 | | | 0.00 |

EXHIBIT E

Case 19-19062-RAM    Claim 15    Filed 09/17/19    Page 4 of 25

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case number: | 19-19062-RAM |
| Debtor 1: | Ana Danton |
| Debtor 2: | |
| Last 4 digits to identify: | 9558 |
| Creditor: | Bayview Loan Servicing, LLC |
| Servicer: | Bayview Loan Servicing, LLC |
| Fixed accrual/daily simple interest/other: | Fixed |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal balance: | $187,958.68 |
| Interest due: | $33,668.93 |
| Fees, costs due: | $6,443.04 |
| Escrow deficiency for funds advanced: | $14,532.25 |
| Less total funds on hand: | $0.00 |
| Total debt: | $242,602.90 |

**Part 3: Arrearage as of Date of the Petition**

| | |
|---|---|
| Principal & Interest due: | $35,836.83 |
| Prepetition fees due: | $6,443.04 |
| Escrow deficiency for funds advanced: | $14,532.25 |
| Projected escrow shortage: | $7,773.56 |
| Less funds on hand: | $0.00 |
| Total prepetition arrearage: | $64,585.68 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & interest: | $1,327.29 |
| Monthly escrow: | $777.36 |
| Private mortgage insurance: | $0.00 |
| Total Monthly Payment: | $2,104.65 |
| Effective Date: | 08/01/2019 |

EXHIBIT F

**PART V Loan Payment History from First Date of Default Last Name - Danton - Case # 19-19062**

| Date | Contractual payment amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin, Int & exp past due balance | Amount to Principal | Amount to interest | Amount to escrow | Amount to fees or penalties | Unapplied funds | Principal Balance | Accrued Interest balance | Escrow balance | Fees/Charge balance | Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/17/09 | | | $98.65 | Late Charge Assessed | 7/1/2009 | $1,275.99 | | | | $98.65 | | $115,873.65 | | -$6,074.44 | $98.65 | $17.50 |
| 08/17/09 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $2,551.98 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $136.93 | $17.50 |
| 09/16/09 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $3,827.97 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $175.21 | $17.50 |
| 10/16/09 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $5,103.96 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $213.49 | $17.50 |
| 11/16/09 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $6,379.95 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $251.77 | $17.50 |
| 12/16/09 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $7,655.94 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $290.05 | $17.50 |
| 01/16/10 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $8,931.93 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $328.33 | $17.50 |
| 02/16/10 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $10,207.92 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $366.61 | $17.50 |
| 03/16/10 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $11,165.04 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $404.89 | $17.50 |
| 04/16/10 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $12,122.16 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $443.17 | $17.50 |
| 05/17/10 | | | $38.28 | Late Charge Assessed | 7/1/2009 | $13,079.28 | | | | $38.28 | | $115,873.65 | | -$6,074.44 | $481.45 | $741.50 |
| 06/16/10 | | | $38.28 | Late Charge Assessed | 8/1/2009 | $12,760.41 | | | | $38.28 | | $115,676.97 | | -$5,755.55 | $519.73 | $189.51 |
| 09/16/11 | | | $38.28 | Late Charge Assessed | 3/1/2011 | $18,185.38 | | | | $38.28 | | $114,263.60 | | -$16,246.07 | $558.01 | $669.58 |
| 10/08/14 | | | | Payment | 3/1/2011 | $56,986.76 | $257.18 | $699.92 | $187.98 | | -$1,703.09 | $106,398.04 | | -$40,472.97 | | $1,934.24 |
| 09/14/16 | | | $250.00 | RK Attorney Fee | | $58,129.16 | | | | $250.00 | | | | | $250.00 | $0.00 |
| 04/19/17 | | | $14.00 | Property Inspection | 10/1/2016 | $14,254.21 | | | | $14.00 | | $192,904.91 | | -$1,280.32 | $264.00 | $2.71 |
| 05/17/17 | | | $14.00 | Property Inspection | 10/1/2016 | $16,296.55 | | | | $14.00 | | $192,904.91 | | -$1,280.32 | $278.00 | $13.55 |
| 06/23/17 | | | $14.00 | Property Inspection | 11/1/2016 | $16,306.60 | | | | $14.00 | | $192,843.56 | | -$575.32 | $292.00 | $13.55 |
| 07/24/17 | | | $14.00 | Property Inspection | 11/1/2016 | $18,348.94 | | | | $14.00 | | $192,843.56 | | -$575.32 | $306.00 | $16.26 |
| 08/24/17 | | | $14.00 | Property Inspection | 11/1/2016 | $20,391.28 | | | | $14.00 | | $192,843.56 | | -$575.32 | $320.00 | $0.00 |
| 09/12/17 | | | $850.00 | BK Attorney Fee | 1/1/2017 | $18,369.04 | | | | $850.00 | | $192,719.65 | | -$2,862.32 | $1,170.00 | $0.00 |
| 09/12/17 | | | $53.09 | Property Inspection | 2/1/2017 | $18,369.04 | | | | $53.09 | | $192,657.08 | | | $1,184.00 | $0.00 |
| 10/31/17 | | | $14.00 | Property Inspection | 2/1/2017 | $18,369.04 | | | | $14.00 | | $192,657.08 | | | $1,198.00 | $0.00 |
| 11/16/17 | | | $53.09 | Property Inspection | 3/1/2017 | $18,371.38 | | | | $53.09 | | $192,594.10 | | | $1,251.09 | $0.00 |
| 11/29/17 | | | $14.00 | Property Inspection | 3/1/2017 | $18,371.38 | | | | $14.00 | | $192,594.10 | | | $1,265.09 | $0.00 |
| 01/10/18 | | | $14.00 | Property Inspection | 5/1/2017 | $18,381.06 | | | | $14.00 | | $192,466.90 | | -$5,203.97 | $1,279.09 | $0.00 |
| 01/16/18 | | | $53.09 | Property Inspection | 5/1/2017 | $18,381.06 | | | | $53.09 | | $192,466.90 | | -$5,203.97 | $1,332.18 | $0.00 |
| 02/05/18 | | | $14.00 | Property Inspection | 5/1/2017 | $20,423.40 | | | | $14.00 | | $192,466.90 | | -$5,203.97 | $1,346.18 | $0.00 |
| 04/12/18 | | | $14.00 | Property Inspection | 5/1/2017 | $22,465.74 | | | | $14.00 | | $192,466.90 | | -$5,203.97 | $1,360.18 | $0.00 |
| 04/12/18 | | | -$400.00 | foreclosure cost | 5/1/2017 | $24,508.08 | | | | -$400.00 | | $192,466.90 | | -$5,203.97 | $1,360.18 | $0.00 |
| 04/12/18 | | | -$660.00 | FCL Attorney Cost | 5/1/2017 | $24,508.08 | | | | -$660.00 | | $192,466.90 | | -$5,203.97 | $1,765.18 | $0.00 |
| 04/12/18 | | | $913.50 | FCL Attorney Cost | 5/1/2017 | $24,508.08 | | | | $913.50 | | $192,466.90 | | -$5,203.97 | $1,825.18 | $0.00 |
| 04/12/18 | | | -$1,087.50 | FCL Attorney Cost | 5/1/2017 | $24,508.08 | | | | -$1,087.50 | | $192,466.90 | | -$5,203.97 | $2,738.68 | $0.00 |
| 04/30/18 | | | -$725.00 | FCL Attorney Fees | 5/1/2017 | $28,592.76 | | | | -$725.00 | | $192,466.90 | | -$5,203.97 | $3,826.18 | $0.00 |
| 05/29/18 | | | $125.00 | Loss Mit Cost | 5/1/2017 | $30,635.10 | | | | $125.00 | | $187,958.68 | | -$5,203.97 | $4,551.18 | $0.00 |
| 06/26/18 | | | $125.00 | Attorney Fees | 5/1/2017 | $30,635.10 | | | | $125.00 | | $187,958.68 | | -$5,203.97 | $4,551.18 | $0.00 |
| 07/02/18 | | | $275.00 | Foreclosure cost | 5/1/2017 | $30,635.10 | | | | $275.00 | | $187,958.68 | | -$5,203.97 | $4,555.18 | $0.00 |
| 07/02/18 | | | -$250.00 | FCL Attorney Fees | 5/1/2017 | $30,635.10 | | | | -$250.00 | | $187,958.68 | | -$5,203.97 | $4,579.18 | $0.00 |
| 07/09/18 | | | -$725.00 | FCL Attorney Fees | 5/1/2017 | $30,635.10 | | | | -$725.00 | | $187,958.68 | | -$5,203.97 | $4,593.18 | $0.00 |
| 07/09/18 | | | $14.00 | Property Inspection | 5/1/2017 | $30,635.10 | | | | $14.00 | | $187,958.68 | | -$5,203.97 | $4,468.18 | $0.00 |
| 07/09/18 | | | $14.00 | Property Inspection | 5/1/2017 | $30,635.10 | | | | $14.00 | | $187,958.68 | | -$5,203.97 | $4,343.18 | $0.00 |
| 07/23/18 | | | $14.00 | Property Inspection | 5/1/2017 | $43,058.25 | | | | $14.00 | | $187,958.68 | | -$14,532.25 | $4,618.18 | $0.00 |
| 08/20/18 | | | $15.00 | Property Inspection | 5/1/2017 | $43,058.25 | | | | $15.00 | | $187,958.68 | | -$14,532.25 | $4,668.18 | $0.00 |
| 10/24/18 | | | $250.00 | Late Charge Assessed | 5/1/2017 | $43,058.25 | | | | $250.00 | | $187,958.68 | | -$14,532.25 | $5,593.18 | $0.00 |
| 11/28/18 | | | $11.00 | Property Inspection | 5/1/2017 | $46,269.70 | | | | $11.00 | | $187,958.68 | | -$14,532.25 | $5,607.18 | $0.00 |
| 12/21/18 | | | $11.00 | Property Inspection | 5/1/2017 | $47,481.15 | | | | $11.00 | | $187,958.68 | | -$14,532.25 | $5,621.18 | $0.00 |
| 01/10/19 | | | $250.00 | FCL Attorney Fees | 5/1/2017 | $49,623.18 | | | | $250.00 | | $187,958.68 | | -$14,532.25 | $5,636.18 | $0.00 |
| 01/15/19 | | | $11.00 | Attorney Fees | 5/1/2017 | $49,623.18 | | | | $11.00 | | $187,958.68 | | -$14,532.25 | $5,647.18 | $0.00 |
| 01/16/19 | | | $250.00 | FCL Attorney Fees | 5/1/2017 | $51,765.21 | | | | $250.00 | | $187,958.68 | | -$14,532.25 | $5,658.18 | $0.00 |
| 02/27/19 | | | $66.36 | Late Charge Assessed | 5/1/2017 | $53,907.24 | | | | $66.36 | | $187,958.68 | | -$14,532.25 | $5,908.18 | $0.00 |
| 03/26/19 | | | $11.00 | Property Inspection | 5/1/2017 | | | | | $11.00 | | $187,958.68 | | -$14,532.25 | $6,158.18 | $0.00 |
| 04/18/19 | | | $11.00 | Property Inspection | 5/1/2017 | | | | | $11.00 | | $187,958.68 | | -$14,532.25 | $6,224.54 | $0.00 |
| 04/29/19 | | | -$402.50 | Attorney Fees | 5/1/2017 | | | | | -$402.50 | | $187,958.68 | | -$14,532.25 | $6,235.54 | $0.00 |
| 05/31/19 | | | $11.00 | Property Inspection | 5/1/2017 | | | | | $11.00 | | $187,958.68 | | -$14,532.25 | $6,246.54 | $0.00 |
| 06/26/19 | | | $11.00 | Property Inspection | 5/1/2017 | | | | | $11.00 | | $187,958.68 | | -$14,532.25 | $6,257.54 | $0.00 |
| 07/09/19 | | | $250.00 | Attorney Fees Reclassified | 5/1/2017 | $56,049.27 | | | | $250.00 | | $187,958.68 | | -$14,532.25 | $6,943.04 | $0.00 |



**Tower Hill Signature Insurance Company**

P.O. Box 147018 Gainesville, FL 32614-7018

| DWELLING FIRE DECLARATIONS | POLICY NUMBER |
|---|---|
| | ██████612 |

**THIS IS NOT A BILL**

New
Issued On: 04/28/2020

Payment notice will be sent separately to: Insured

**Insured**
ANA DANTON
11318 SW 147TH PL
MIAMI, FL 33196

**AGENCY**      FL7623
John Galt Insurance Agency
220 HILLSBOROUGH TECH DR #230
DEERFIELD BEACH, FL 33441

PHONE NUMBER: (954) 903-4064

_(left margin, rotated)_ 00300400000 P008743612 958803 SDEC D

**POLICY PERIOD:  04/28/2020 to 04/28/2021.**  Each period begins and ends at 12:01 AM standard time at the insured location.

**DESCRIBED LOCATION:**  Same as address shown under Insured.

Coverage is provided where a premium or limit is shown for the coverage.

| BASIC POLICY COVERAGES | LIMIT | FIRE | EXTENDED COVERAGE | HURRICANE | ANNUAL PREMIUM |
|---|---|---|---|---|---|
| COVERAGE A - Dwelling | $325,000 | $295.00 | $1,343.00 | $1,798.00 | $3,436.00 |
| COVERAGE B - Other Structures | $6,500 | Incl | Incl | Incl | Incl |
| COVERAGE C - Personal Property | $0 | $0.00 | $0.00 | $0.00 | $0.00 |
| COVERAGE D - Fair Rental Value | $32,500 | Incl | Incl | Incl | Incl |
| COVERAGE L -  Liability Each Occurrence | $100,000 | | | | $60.00 |
| COVERAGE M - Medical Payments to Others Each Person | $1,000 | | | | Incl |

**BREAKDOWN OF PREMIUM:**

| Charges | Limit | Premium |
|---|---|---|
| Annual Premium for Basic Policy Coverages | | $3,496.00 |
| Catastrophic Ground Cover Collapse Coverage | | Incl |
| Limited Fungi, Wet or Dry Rot, or Bacteria Coverage Liability | $50,000 | Incl |
| Limited Fungi, Wet or Dry Rot, or Bacteria Coverage Property | $10,000/$10,000 | Incl |
| Limited Water Damage Coverage | | $107.00 |
| Rental to Others (Short Term Exclusions) - Property | | Incl |
| Replacement Cost Buy Back | | Incl |
| Water Back-Up and Sump Discharge or Overflow      Deductible = $250 | | $100.00 |
| Water Damage Exclusion | | Incl |
| Emergency Management Preparedness and Assistance Trust Fund (EMPAT) Fee | | $2.00 |
| Managing General Agency (MGA) Fee | | $25.00 |

| Credits | | Premium |
|---|---|---|
| Age of Dwelling Credit | | Incl |
| All Other Perils Deductible Credit | | Incl |
| Hurricane Deductible Credit | | Incl |
| Residential Windstorm Loss Mitigation Devices Credit | | Incl |
| Sinkhole Exclusion | | Incl |

| **Total Policy Premium:** | **$3,730.00** |
|---|---|

RP-DW-DEC (08/18)





**DEDUCTIBLE (Section I Only):**

### The Calendar Year Hurricane Deductible is $16,250 (5% of Coverage A).
**The All Other Perils Deductible is $2,500.**

- In case of a covered property loss, we cover only that part of the covered loss over the deductible stated, unless otherwise stated in your policy.

**Mortgagee Information:**
CC: BAYVIEW LOAN SERVICING
ISAOA/ATIMA
PO BOX 5933
TROY, MI 48007-5933
Loan Id: 0091569970

Important: Please notify your agent immediately if the mortgage company shown is incorrect.

**BASIC RATING INFORMATION:**

| PROGRAM | FORM CODE | TERRITORY | COUNTY | CONSTRUCTION YEAR | CONSTRUCTION TYPE |
|---|---|---|---|---|---|
| RPFLDP | DP-3 | 320 | MIAMI-DADE | 1987 | Masonry |

| FIRE PROTECTION CLASS | ROOF TYPE | BUILDING CODE (BCEG) GRADE | WIND PROTECTIVE DEVICE | PROTECTIVE DEVICE |
|---|---|---|---|---|
| 2 | Gable | Does Not Apply | None | None |

| OCCUPIED BY | NUMBER OF FAMILIES/UNITS |
|---|---|
| Tenant | 1 |

**PREMIUM SUMMARY:**  Hurricane Premium:     $1,798.00
Non-hurricane Premium:   $1,932.00

**APPLICABLE FORMS AND ENDORSEMENTS:**
RPI DF 09 COV (04/09), DP 00 03 (07/88), DL 24 01 (07/88), DL 24 11 (07/88), DL 24 16 (07/88), DW-0260-00 (06/19), DW-0280-00 (06/19), DW-0461-00 (10/18), DW-0495-00 (05/19), IL-0301-00 (09/11), IL-0506-00 (06/07), IL-0513-00 (09/16), IL-P-001 (01/04), IL-WMCA (04/11), Privacy Notice (05/13), RP-CKLS DW (02/11), RPI DF 09 DN (10/18), RPI DF 09 ED (10/18), RPI DF 09 ELE (02/10), RPI DF 09 FCL (10/18), RPI DF 09 HD (10/18), RPI DF 09 LWD (12/08), RPI DF 09 OC (05/19), RPI DF 09 SP (10/18), RPI DF 09 SPL (10/18), RPI DF 09 WD (10/18)

**NOTICES:**
- **WATER DAMAGE CAUSED BY ACCIDENTAL DISCHARGE OF WATER FROM PLUMBING OR APPLIANCE IS LIMITED TO $10,000. ALL OTHER WATER DAMAGE IS EXCLUDED, UNLESS WATER PENETRATION IS A DIRECT RESULT OF DAMAGE CAUSED DURING A HURRICANE OR TROPICAL STORM OCCURRENCE.**
- **This policy does not provide Animal Liability coverage.**
- **This policy does not include the peril of "Sinkhole Loss".**
- **This policy does not provide Flood coverage.**
- **This policy only provides Premises Liability coverage.**
- This policy does not provide coverage for Mobile homes or Prefabricated homes.
- This Declarations replaces all previously issued policy Declarations, if any. This Declarations together with your policy and endorsements completes your policy. Refer to your policy and endorsements for details regarding your coverages, limits, and exclusions.
- To request the complete copy of your policy including all forms, endorsements, terms and conditions, please contact our Customer Service Center at (800) 342-3407 between the hours of 8:00 am and 6:00 pm, Monday through Friday (Eastern Time), excluding holidays.

# Composite Exhibit C

POLICY NUMBER
████████612

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**LAW AND ORDINANCE: LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.**

**FLOOD INSURANCE: YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR DWELLING FIRE INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.**

0040040000 P008743612 958803 SDEC D

**COUNTERSIGNATURE:**
Countersigned by Authorized Representative:          Stephen E. Allnutt          Prepared: 04/28/2020

| | |
|---|---|
| **AGENCY PHONE:** | (954) 903-4064 |
| **CUSTOMER SERVICE:** | (800) 342-3407 |
| **QUESTIONS:** | If you have questions about your insurance policy or coverages, please contact your agent. If you have payment or billing questions, please call the Customer Service number or contact your agent. |
| **TO FILE A CLAIM:** | Tower Hill Insurance Services, LLC    **PHONE:** (800) 216-3711 (24 hours a day, 7 days a week) PO Box 143180    **FAX:** (352) 248-2167 Gainesville, FL 32614-3180 |
| **FRAUD HOTLINE:** | (866) 265-6590 (Toll Free and Confidential) |

RP-DW-DEC (08/18)



Composite Exhibit C

**TOWER HILL SIGNATURE INSURANCE COMPANY**
*An affiliate of Tower Hill Insurance Group, LLC*
P.O. Box 147018
Gainesville, FL 32614-7018

**PAYMENT CONFIRMATION**

ANA DANTON
*11318 SW 147TH PL*
*MIAMI, FL 33196*

**DP-3 Policy Number:** ▮▮▮612

| | |
|---|---|
| Date Received: | 04/28/2020 |
| Amount Paid: | $857.90 |
| Confirmation Number: | ▮▮▮5241 |

**Insured**
ANA DANTON

**Insured Location**
11318 SW 147TH PL
MIAMI, FL 33196

**Policy Effective:**     **From:** 04/28/2020     **To:** 04/28/2021

Thank you. This confirms you have submitted a payment in the amount of $857.90 by ECHECK on 04/28/2020. Payments received before 6:00pm ET on a business day will be considered as paid on that date. If the payment is made after 6:00pm ET, we will consider that the next business day. Payments will be applied to your account within two business days.

The credit to your policy is subject to reversal if your payment is cancelled or rejected.

**Billing Payment Options:**
*Online:* www.THIG.com
*Phone Pay:* (800) 342-3407
*Mail:* Checks payable to
TOWER HILL SIGNATURE INSURANCE COMPANY
PO Box 865001, Orlando, FL 32886-5001

**Agency Information:**
Agency Code: 7623
John Galt Insurance Agency
220 Hillsborough Tech Dr #230
Deerfield Beach, FL 33441
Phone: (954) 903-4064

**Customer Service:** (800) 342-3407

# EXHIBIT H



**BAYVIEW** LOAN SERVICING

P.O. Box 331409
Miami FL 33233-1409

| ANNUAL ESCROW ACCOUNT DISBURSEMENTS | |
|---|---|
| HAZARD INS | $5,612.00 |
| COUNTY TAX | $3,716.28 |
| Total | $9,328.28 |

Escrow Payment Calculation  $9,328.28 / 12 months =

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
AND CHANGE OF PAYMENT NOTICE PREPARED FOR
ACCOUNT NUMBER:**
ESCROW ANALYSIS DATE: 07/18/2019

Jose Rodriguez
C/O Paul Meadows
Fidelis Law, Pa
#207                          1289
454 NW 22AVE
Miami, FL 33125

**NEW PAYMENT IS AS FOLLOWS:**

| | |
|---|---|
| Principal and Interest | $1,327.29 |
| Required Escrow Payment | $777.36 |
| Shortage/Surplus Spread | |
| Optional Coverages | |
| Buydown or Assistance Payments | |
| Other | |

| | |
|---|---|
| **Total Payment** | **$2,104.65** |
| **New Payment Effective Date:** | **08/01/2019** |
| **Current Payment Due Date:** | **05/01/2017** |

This statement provides a detailed summary of activity related to your escrow account. Bayview Loan Servicing maintains your escrow account to pay such items as property taxes, insurance premiums, and/or mortgage insurance. The escrow items to be disbursed from your account over the next twelve months are summarized above.

**ESCROW ACCOUNT PROJECTION FOR THE COMING YEAR**

The following estimate of activity in your escrow account from 08/2019 through 07/2020 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included. This also includes the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| MONTH | PAYMENTS TO ESCROW ACCOUNT | PAYMENTS FROM ESCROW ACCOUNT | | | | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|---|---|
| | | MIP/PMI | FLOOD | HAZ. INS. | WIND INS. | TAXES | TAX DESC. | PROJECTED | REQUIRED |
| STARTING BAL | | | | | | | | $14,532.25-³ | $7,773.56² |
| AUG 19 | $777.36 | | | | | | | $13,754.89- | $8,550.92 |
| SEP 19 | $777.36 | | | $5,612.00 | | | | $18,589.53- | $3,716.28 |
| OCT 19 | $777.36 | | | | | | | $17,812.17- | $4,493.64 |
| NOV 19 | $777.36 | | | | | $3,716.28 | COUNTY TAX | $20,751.09-* | $1,554.72 LP |
| DEC 19 | $777.36 | | | | | | | $19,973.73- | $2,332.08 |
| JAN 20 | $777.36 | | | | | | | $19,196.37- | $3,109.44 |
| FEB 20 | $777.36 | | | | | | | $18,419.01- | $3,886.80 |
| MAR 20 | $777.36 | | | | | | | $17,641.65- | $4,664.16 |
| APR 20 | $777.36 | | | | | | | $16,864.29- | $5,441.52 |
| MAY 20 | $777.36 | | | | | | | $16,086.93- | $6,218.88 |
| JUN 20 | $777.36 | | | | | | | $15,309.57- | $6,996.24 |
| JUL 20 | $777.36 | | | | | | | $14,532.21- | $7,773.60 |
| Total | | | | $5,612.00 | | $3,716.28 | | | |

(1)  Your current escrow balance is negative $14,532.25. To project the next year's tax and insurance payment we added $0.00 for payments not yet made and subtracted $0.00 for disbursement not yet made.  This brings your projected starting balance to negative $14,532.25 (see breakdown on next page).

(LP)  The lowest (LP) required escrow balance for the next 12 months is scheduled to be $1,554.72 (cushion) which is 1/6 of the anticipated escrow account installment. Under Federal Law (RESPA) or applicable state law, a cushion in your escrow account is permitted (excluding MIP/PMI).

(*)  Your lowest (*) projected escrow balance for the next 12 months is scheduled to be negative $20,751.09. Your bankruptcy escrow claim amount of $22,305.81 will be added to your escrow balance.  The difference between the lowest projected balance, bankruptcy escrow claim amount and cushion is $0.00. Your escrow account does not have a shortage or overage at this time.

(2)  Based on the escrow account projection for the coming year indicated above, your escrow account requires a starting escrow balance of $7,773.56 to arrive at the lowest (LP) required escrow balance.

**This escrow analysis is based on the assumption that all escrow advances made on your loan prior to your bankruptcy filing date are included in your bankruptcy plan and will be paid through that plan. In other words, we are only analyzing for taxes (and insurance if applicable) that will come due after your current bankruptcy filing date.**

**IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE NOTIFY US AND PROVIDE THIS CORRESPONDENCE TO YOUR ATTORNEY.**

**Account Number:** ▮▮▮▮▮▮  **Name:** Jose Rodriguez

This is a statement of actual activity in your escrow account from 04/2019 through 07/2019. Last year's projections are next to the actual activity.  Your mortgage payment for the past year was $2,142.03 of which $1,327.29 was for principal and interest and $814.74 went into your escrow account.  An asterisk(*) indicates a difference from a previous estimate either in the date or the amount.  An 'E' indicates a projected disbursement or payment.

Your anticipated low point may or may not have been reached based on one or more of the following factors:

| PAYMENT(S) | TAXES | INSURANCE |
|---|---|---|
| • Monthly payment(s) were received less than OR greater than expected | • Tax rate and/or assessed value changed | • Premium changed |
| • Monthly payment(s) were received earlier OR later than expected | • Exemption status lost or changed | • Coverage changed |
| • Previous overage was returned to escrow | • Supplemental/Delinquent tax paid | • Additional premium paid |
| • Previous deficiency/shortage not paid entirely | • Tax bill paid earlier OR later than expected | • Insurance bill paid earlier OR later than expected |
| | • Tax installment not paid | • Premium was not paid |
| | • Tax refund received | • Premium refund received |
| | • New tax escrow requirement paid | • New  insurance escrow requirement paid |
| | | • Force placed insurance premium paid |

|  | PAYMENTS TO ESC. ACCT. | | PAYMENTS FROM ESC. ACCT. | | | ESCROW BAL. | COMPARISON |
|---|---|---|---|---|---|---|---|
| | PROJECTED | ACTUAL | PROJECTED | ACTUAL | DESCRIPTION | PROJECTED | ACTUAL |
| **MONTH** | | | | | | | |
| **STARTING BAL** | | | | | | $4,664.12 | $14,532.25- |
| APR | $777.36 | $0.00 * | | | | $5,441.48 | $14,532.25- |
| MAY | $777.36 | $0.00 * | | | | $6,218.84 | $14,532.25- |
| JUN | $777.36 | $0.00 * | | | | $6,996.20 | $14,532.25- |
| JUL | $777.36 | $0.00 * | $0.00 | $0.00 | | $7,773.56 | $14,532.25- L |
| Total | $3,109.44 | $0.00 | | | | | |

* = indicates a difference from a previous estimate either in the date or the amount
'E' = projected disbursement or payment
'L' = Lowest Escrow Balance

**Starting Projected Escrow Balance:**
| | |
|---|---|
| **Current Escrow Balance** | $14,532.25- |
| **Payments Not Yet Made** | $0.00 |
| **Disbursements Not Yet Made** | $0.00 |
| **Projected Escrow Balance** | $14,532.25- |

At the time of your escrow account review, your expected lowest balance was $1,554.72 (cushion) or 1/6 of the anticipated escrow payment. Your actual lowest escrow balance was negative $14,532.25, as shown in the above "Account History".

**Confirmed SII Disclaimer:** If you are a confirmed successor in interest of the account, unless you assume the mortgage loan obligation under state law, you are not personally liable for the mortgage debt and cannot be required to use your own assets to pay the mortgage debt.

**Notice to customers who are in bankruptcy or whose obligation has been discharged and not reaffirmed: To the extent your obligation has been discharged or is subject to an automatic stay in a bankruptcy proceeding under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or an attempt to collect any payment. If you are represented by an attorney, please notify us and provide this correspondence to your attorney.**

**Should you require additional information, please call Customer Service: 1-800-457-5105**
**Mon-Fri, 8:00 a.m. to 7:00 p.m., EST**
**www.bayviewloanservicing.com**